PD-0188-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 2/24/2015 1:33:33 PM
Accepted 2/26/2015 4:12:03 PM
ABEL ACOSTA
CLERK

NO. PD-0188-15

## IN THE TEXAS COURT OF CRIMINAL APPEALS

## AUSTIN, TEXAS

CAMERON SCOTT MOSELEY,
Petitioner/Appellant

FILED IN
COURT OF CRIMINAL APPEALS

February 26, 2015

ABEL ACOSTA, CLERK

VS.

THE STATE OF TEXAS,
Respondent/Appellee

Petition for Discretionary Review from the Ninth Court of Appeals
Cause No. 09-14-00279-CR; and on Appeal from the 258th District Court of
Polk County, Texas, Cause No. 23340

**STATE'S REPLY TO PETITION FOR DISCRETIONARY REVIEW**

TO THE HONORABLE COURT OF CRIMINAL APPEALS:

COMES NOW the State of Texas by and through her Assistant Criminal District

Attorney, Tommy L. Coleman, and respectfully requests that this honorable court deny

discretionary review as requested by the Petitioner in the above-named cause.

1

## Statement Regarding Oral Argument

The State does not believe that oral argument would materially assist this court in reaching its decision. Therefore the State does not request oral argument unless this court grants Petitioner's request to orally argue this case.

## Statement of the Case

The statement of the nature of this case appears in the State's Brief previously filed in the Ninth Court of Appeals, attached hereto as Exhibit A and incorporated by reference herein.

## Statement of Procedural History

The procedural history in this case appears in the Petition for Discretionary Review.

## The Court of Appeals Properly Determined the Issues

The State agrees with the Ninth Court of Appeals opinion delivered on February 4, 2015 in its entirety and elects not to respond to the merits of the Appellant's request for discretionary review. The State files this reply for the purpose of satisfying the deadline to file a reply under TEX. R. APP. P. 68.9 and respectfully request that the

court considers this to be not unlike a "Letter Reply" intended to expedite the disposition of this matter without further delay.

## Prayer

The State prays that the Court of Criminal Appeals denies discretionary review as requested by the Petitioner.

Respectfully submitted,

**Tommy L. Coleman**
Assistant Criminal District Attorney
Polk County Criminal District Attorney's Office
101 West Mill Street, Suite 247
Livingston, Texas 77351
(936) 327-6868
(936) 327-6875 fax
tcoleman@polkcountyda.com
ATTORNEY FOR APPELLEE

## CERTIFICATE OF SERVICE

I, Tommy L. Coleman, Assistant Criminal District Attorney, Polk County, State of Texas, do hereby certify that a true and correct copy of the above and foregoing **State's Reply to Petition for Discretionary Review** has been served by placing same in the United States Mail and/or facsimile on this the 24th day of February, 2015, addressed to:

Seth Evans
507 North Washington Ave.
Livingston, Texas 77351
(936) 327-0233 fax

TOMMY L. COLEMAN
Asst. Criminal District Attorney

EXHIBIT _A_

NO. 09-14-00279-CR

## IN THE COURT OF APPEALS

## FOR THE NINTH SUPREME JUDICIAL DISTRICT

## BEAUMONT, TEXAS

---

The State of Texas, Appellant

v.

Cameron Scott Moseley, Appellee

---

On Appeal from the 258th Judicial District

of Polk County, Texas, Cause No. 23,340

---

## APPELLANT'S BRIEF

---

**WILLIAM LEE HON**
Criminal District Attorney
Polk County, Texas
101 West Mill Street, Suite 247
Livingston, Texas 77351
(936) 327-6868

**BRIAN FOLEY**
Assistant Criminal District Attorney
Polk County, Texas
101 West Mill Street, Suite 247
Livingston, Texas 77351
(936) 327-6868

## ORAL ARGUMENT REQUESTED

# IDENTITY OF PARTIES AND COUNSEL

**JUDGE:**

HON. DAVID WILSON, Presiding
258th Judicial District
Polk County Judicial Center
101 West Mill Street, Suite 286
Livingston, Texas 77351
(936) 327-6847

**PROSECUTOR:**

MR. BRIAN FOLEY
Assistant Criminal District Attorney
Polk County District Attorney's Office
101 West Mill Street, Suite 247
Livingston, Texas 77351
(936) 327-6868

**DEFENSE COUNSEL:**

MR. SETH EVANS
507 N. Washington Ave.
Livingston, Texas 77351
(936) 327-0232
SBN: 24045852

**APPELLEE:**

MR. CAMERON SCOTT MOSELEY
Represented by Seth Evans

**APPELLEE ATTY:**

MR. SETH EVANS
507 N. Washington Ave.
Livingston, Texas 77351
(936) 327-0232
SBN: 24045852

**STATE'S APPEAL ATTY:**

MR. BRIAN FOLEY
Assistant Criminal District Attorney
Polk County District Attorney's Office
101 West Mill Street, Suite 247
Livingston, Texas 77351
(936) 327-6868
SBN: 24073297

# TABLE OF CONTENTS

Page

IDENTITY OF PARTIES AND COUNSEL................................................i

TABLE OF CONTENTS ..................................................................... ii-iii

INDEX OF AUTHORITIES................................................................ iii-iv

STATEMENT OF THE CASE.................................................................1

STATEMENT REGARDING ORAL ARGUMENT.................................1

ISSUE PRESENTED ...............................................................................1

STATEMENT OF JURISDICTION.........................................................2

STATEMENT OF FACTS.........................................................................3

SUMMARY OF THE ARGUMENT.......................................................4-5

ARGUMENT .........................................................................................5-13

I.    PENALTY GROUP 2-A IS A BROADLY DEFINED SUBCLASS OF SYNTHETIC CANNABINOIDS AND A NON-EXCLUSIVE LIST OF PROHIBITED SUBSTANCES INCLUDED THEREIN.................................................7-8

   A. The plain language indicates the statute creates a broad category and a non-exclusive list .................................................................... 7

   B. Comparisons to other similar statutes show the difference between language that creates exclusive lists and non-exclusive lists .............. 7

   C. The legislative history indicates the intention to create a non-exclusive list and recognizes the ongoing problem of unregulated synthetic cannabinoids ....................................................................7-8

   D. The defendant never argued and therefore waived for purposes of appeal any argument that the indictment may have failed to provide

notice because it did not include the name of the non-listed substance as "XLR-11" ........................................................................ 7-8

PRAYER ............................................................................ 13-14

CERTIFICATE OF SERVICE ............................................ 15

CERTIFICATE OF COMPLIANCE .................................... 15

## INDEX OF AUTHORITIES

Page

**CASES:**

State v. Abrego, 974 S.W.2d 177,
(Tex. App. – San Antonio 1998) ..................................... 2

State v. Eaves, 800 S.W.2d 220,
(Tex. Crim. App. 1990) ................................................... 2

State v. Garrett, 824 S.W.2d 181,
(Tex. Crim. App. 1992) ................................................... 2

State v. Mahaffey, 316 S.W.3d 633,
(Tex. Crim. App. 2010) ............................................... 8,9

State v. Moreno, 807 S.W.2d 327,
(Tex. Crim. App. 1991) ................................................... 2

**STATUTES:**

TEX. HEALTH & SAFETY CODE § 481.1031 ................... 1,5,6,79

TEX. HEALTH & SAFETY CODE § 481.113 .................... 5,6,7,14

TEX. HEALTH & SAFETY CODE § 481.106 ..................... 11

TEX. CODE CRIM. PRO. § 44.01(a)(1) ........................... 2

## STATEMENT OF THE CASE

This is a State's appeal from a pretrial order quashing and dismissing the indictment because the trial court held that it failed to allege a controlled substance that is specifically listed by scientific name in TEX. HEALTH & SAFETY CODE § 481.1031.

## STATEMENT REGARDING ORAL ARGUMENT

Due to the technical nature of the issues on appeal, the court may benefit from hearing oral argument.

## ISSUE PRESENTED

I. PENATLY GROUP 2-A IS A BROADLY DEFINED SUBCLASS OF SYNTHETIC CANNABINOIDS AND A NON-EXCLUSIVE LIST OF PROHIBITED SUBSTANCES INCLUDED THEREIN

1

## STATEMENT OF JURISDICTION

"Under article 44.01(a)(1) of the Code of Criminal Procedure, the State may appeal from an order if the order dismisses a charging instrument or any portion thereof. Within the context of article 44.01(a)(1), appellate jurisdiction is invoked if the trial court's ruling effectively terminates the prosecution. *See State v. Eaves,* 800 S.W.2d 220, 224 (Tex. Crim. App. 1990). In *State v. Moreno,* 807 S.W.2d 327, 332 (Tex. Crim. App. 1991), the Court of Criminal Appeals held that an order quashing an information terminates the prosecution against an accused, thereby bringing an action within the purview of article 44.01(a)(1), whenever the effect of its order forces any alteration of the indictment or information before the trial on the merits and the State is not willing to comply with that order. *Id.* at 333–34. Pursuing an appeal is sufficient indication that the State is unwilling to alter the indictment. *Id.* at 334. Thus, the fact that the State appeals the dismissal of an amendable information does not vitiate the State's right to appeal. *See id.; see also State v. Garrett,* 824 S.W.2d 181, 183 (Tex. Crim. App. 1992). *State v. Abrego,* 974 S.W.2d 177, 178 (Tex. App. – San Antonio 1998). Here the trial court granted the defendant's motion to quash and the State Appealed. (RR 18)(CR 10)

2

## STATEMENT OF FACTS

Cameron Scott Moseley filed a motion to quash the indictment. (CR 2) At the conclusion of a hearing on the motion the trial court granted the motion to quash. (CR 10). The defendant was found with well over 400 grams of a substance that was labeled "Kush." (State's Exhibit 1) For purposes of appeal the State adopts the following findings of fact from the suppression hearing as submitted to the clerk by the trial court:

1. The Defendant was indicted by a Polk County Grand Jury for the felony offense of possession with intent to deliver a controlled substance Penalty Group 2-A 400 grams or more.

2. Both parties agreed that the substance in question has the scientific name "XLR-11."

3. "XLR-11" is not specifically listed by scientific name under Penalty Group 2-A.

3

## SUMMARY OF THE ARGUMENT

This is a case of first impression. The plain language of Penalty Group 2-A creates a broadly defined subclass of synthetic cannabinoids and a non-exclusive list of prohibited substances included therein. The plain language indicates the statute creates a broad category and a non-exclusive list.

Comparisons to other similar statutes show the difference between language that creates exclusive lists and non-exclusive lists. The legislative history indicates the intention to create a non-exclusive list and recognizes the ongoing problem of unregulated synthetic cannabinoids. The defendant never argued and therefore waived for purposes of appeal any argument that the indictment may have failed to provide notice because it did not include the name of the non-listed substance as "XLR-11."

This Court should reverse conclusion of law number one of the trial court, set aside the order quashing the indictment, and hold that the State may prosecute under Penalty Group 2-A for any substance that meets the basic requirement set out in the statute that the substance be "any quantity of a synthetic chemical compound that is a cannabinoid receptor agonist and mimics the pharmacological effect of naturally occurring cannabinoids, . . . ." This Court should also rule that the word "including: . . ." creates a non-exclusive list of substances which may be properly categorized under Penalty Group 2-A.

4

Therefore a substance that meets the requirements of the broad category is in fact "listed" under Penalty Group 2-A and subject to prosecution under Texas Health and Safety Code §481.113 Manufacture or Delivery of a Substance in Penalty Group 2 or 2-A.

## ARGUMENT

I.     PENALTY GROUP 2-A IS A BROADLY DEFINED SUBCLASS OF SYNTHETIC CANNABINOIDS AND A NON-EXCLUSIVE LIST OF PROHIBITED SUBSTANCES INCLUDED THEREIN

The trial court dismissed the indictment in conclusion of law number one.

> The indictment should be dismissed because it fails to allege a controlled substance that is specifically listed by scientific name in Texas Health and Safety Code §481.1031. That provision lists the scientific name for substances such as "AM-2201; JWH-004 . . ." and others. The statute provides, "Penalty Group 2-A consists of any quantity of a synthetic chemical compound that is a cannabinoid receptor agonist and mimics the pharmacological effect of naturally occurring cannabinoids, including: . . . ." This language creates an exclusive list of substances instead of a broadly defined subclass of synthetic cannabinoids supplemented by a list. This has the effect of preventing prosecution under Penalty Group 2-A even if "XLR – 11" is in fact a synthetic chemical compound that is a cannabinoid receptor agonist and mimics the pharmacological effect of naturally occurring cannabinoids.

(CR 22)

This Court should reverse conclusion of law number one of the trial court, set aside the order quashing the indictment, and hold that the State may

5

prosecute under Penalty Group 2-A for any substance that meets the basic requirement set out in the statute that the substance be "any quantity of a synthetic chemical compound that is a cannabinoid receptor agonist and mimics the pharmacological effect of naturally occurring cannabinoids, . . . ." This Court should also rule that the word "including: . . ." creates a non-exclusive list of substances which may be properly categorized under Penalty Group 2-A. Therefore a substance that meets the requirements of the broad category is in fact "listed" under Penalty Group 2-A and subject to prosecution under Texas Health and Safety Code §481.113 Manufacture or Delivery of a Substance in Penalty Group 2 or 2-A.

## A. The plain language indicates that the statute creates a broad category and a non-exclusive list

No court has previously interpreted the TEX. HEALTH AND SAFETY CODE § 481.1031 definition of Penalty Group 2-A. This is a case of first impression. The plain language of the statute creates a broad category and a non-exclusive list which allows for prosecution of new substances as they appear on the streets. The statute provides:

> "Penalty Group 2-A consists of any quantity of a synthetic chemical compound that is a cannabinoid receptor agonist and mimics the pharmacological effect of naturally occurring cannabinoids, **including**: . . . ."

TEX. HEALTH & SAFETY CODE § 481.1031

6

The statute goes on to list names of chemical compounds which, at the time of the bill's original passage, were known to fall into the broadly defined category. *Id.* The language "including" followed by the list means that Penalty Group 2-A does not create an exclusive list of substances which fall into the category. In fact, "any quantity of a synthetic chemical compound that is a cannabinoid receptor agonist and mimics the pharmacological effect of naturally occurring cannabinoids" will fall into Penalty Group 2-A and will therefore be "listed" with respect to Texas Health and Safety Code §481.113 Manufacture or Delivery of a Substance in Penalty Group 2 or 2-A. *Id.*; TEX. HEALTH & SAFETY CODE §481.113.

This means that the State may prosecute an individual for possessing a substance so long as during the guilt phase of the trial the jurors are presented with evidence beyond a reasonable doubt that the substance in question is in fact a synthetic chemical compound, is in fact a cannabinoid receptor agonist, and does in fact mimic the pharmacological effect of naturally occurring cannabinoids. *See Id.* This may be presented by expert testimony along with chemical testing or even admissions by the defendant.

When the State alleges one of the substances listed by scientific name in the statute, its job is made easier. For example, if the state alleged that the defendant possessed "AM-2201," presentation of evidence beyond a reasonable

7

doubt that the substance in question was determined to be "AM-2201" would be sufficient proof that the defendant possessed a Penalty Group 2-A controlled substance. There would be no need for the State to call an expert witness to confirm that "AM-2201" does in fact mimic the pharmacological effect of naturally occurring cannabinoids. That fact is implied by its inclusion in the statute's list.

It is only when the State seeks to prosecute an individual for possessing a substance that meets the general requirements of the statute but is not specifically listed that this greater degree of evidence is required.

> When [courts] interpret statutes [courts] seek to effectuate the collective intent or purpose of the legislators who enacted the legislation. In doing so, we necessarily focus our attention on the literal text of the statute in question and attempt to discern the fair, objective meaning of that text at the time of its enactment. We follow this principle because (1) the text of the statute is the law; (2) the text is the only definitive evidence of what the legislators had in mind when the statute was enacted into law; and (3) the Legislature is constitutionally entitled to expect that the Judiciary will faithfully follow the specific text that was adopted. Therefore, if the meaning of the statutory text should have been plain to the legislators who voted on it, we ordinarily give effect to that plain meaning. There are two exceptions to this plain-meaning rule: (1) where application of a statute's plain language would lead to absurd consequences; and (2) where the language is not plain but rather ambiguous. In those instances, a court may consider, in arriving at a sensible interpretation, such *extra* textual factors as

8

executive or administrative interpretations of the statute or legislative history."[22]

*Mahaffey v. State*, 316 S.W.3d 633, 637-38 (Tex. Crim. App. 2010).

The plain meaning of the statute creates a broad category of substances by defining a set of characteristics in terms of pharmacological properties and synthetic nature. TEX. HEALTH & SAFETY CODE § 481.1031. Reading the statute in this manner does not lead to absurd consequences. It leads to very logical outcomes considering the evolving nature of synthetic cannabinoid law enforcement challenges and prosecution. (State's Exhibit 2) The language is not ambiguous.

## B. Comparisons to other similar statutes show the difference between language that creates exclusive lists and non-exclusive lists

The language of Penalty Group 2-A is in stark contrast to other penalty groups which do create exclusive lists.

"Penalty Group 1 consists of: (1) *the following* opiates . . . (2) *the following* opium derivatives . . . (3) *the following* substances, . . . (4) *the following* opiates . . . ." This language clearly indicates the legislature's intention to make the list exclusive. Only "the following" substances are described by Penalty Group 1.

9

"Penalty Group 1-A consists of lysergic acid diethylamide (LSD), including its salts, isomers, and salts of isomers." The above language is the entirety of Penalty Group 1-A and therefore doesn't need a list and has no broadly defined category.

"Penatly Group 2 consists of: (1) any quantity of *the following* hallucinogenic substances . . . ." It does not have the word "including" before the list of substances and has the same use of "the following" which makes it an exclusive list.

"Penatly Group 3 consists of: (1) a material, compound, mixture, or preparation that contains any quantity *of the following* substances . . . (2) a material, compound, mixture, or preparation that contains any quantity *of the following* substances . . . (3)Nalorphine; (4) a material, compound, mixture, or preparation containing limited quantities *of the following* narcotic drugs . . . ." Penalty Group 3 follows the same method of providing an exclusive list by limiting the substances to "the following."

"Penalty Group 4 consists of: (1) a compound, mixture, or preparation containing limited quantities of any *of the following* narcotic drugs . . . ." Penalty Group 4 also follows the same method of providing an exclusive list by limiting substances to "the following."

10

Unknown Substances that are similar to substances in Penalty Groups 1, 1-A, and 2 may be prosecuted as a controlled substance analogue under TEX. HEALTH AND SAFETY CODE § 481.106. This does not include Penalty Group 2-A because it is unnecessary. The State agrees with the defendant that he may not be prosecuted using a controlled substance analogue. However because of the non-exclusive nature of Penalty Group 2-A, prosecution does not require use of the controlled substance analogue provision.

## C. The legislative history indicates the intention to create a non-exclusive list and recognizes the ongoing problem of unregulated synthetic cannabinoids

The statute in question's sponsor statement of intent reads:

> K2, also known as Spice, Genie, and Fire & Ice, is marketed as incense, but is actually a product that has been sprayed with a chemical compound that mimics the effects of THC, the active ingredient in marijuana, and is being smoked to produce intoxicating effects. K2 is legal and it is being sold at gas stations and smoke shops across Texas, as well as online to Texans of all ages.
> Unbeknownst to the user, smoking K2 can have dangerous consequences that put the user's health at great risk. The reported side effects include hallucination, severe agitation, elevated heart rate and/or blood pressure, chest pains, blackouts, tremors, seizures, and cardiac infarction. According to the Texas Poison Center Network, there were 555 K2-related calls in 2010, and the number increases with each passing month.
> The problem is spreading across Texas and the use of K2 among people of all ages and all walks of life is increasing. C.S.S.B. 331 addresses the legal sale,

11

manufacture, and possession of synthetic cannabinoids in Texas. Currently, there are three illegal synthetic cannabinoids in Penalty Group 2, but many other compounds are unregulated under Texas law.

C.S.S.B. 331 criminalizes the manufacture, sale, and possession of the unregulated *compounds by broadly defining subclasses of synthetic cannabinoids, but explicitly listing compounds that have been identified in products currently on the market.* The penalties for possession track those of marijuana where the compound has been sprayed onto an organic substance, but differ when the substance is in its pure form. The penalties for manufacture and sale track those of Penalty Group 2.

C.S.S.B. 331 amends current law relating to designating certain synthetic cannabinoids as controlled substances under the Texas Controlled Substances Act, provides penalties, and establishes certain criminal consequences or procedures.

(State's Exhibit 2).

The Legislature understood the challenges facing law enforcement and prosecution and drafted a statute that would effectively combat the new problems that changing synthetic cannabinoids presented. In doing so the legislature drafted a statute that "criminalizes the manufacture, sale, and possession of the unregulated compounds by broadly defining subclasses of synthetic cannabinoids, but explicitly listing compounds that have been identified in products currently on the market." (State's Exhibit 2). In other words, the legislature created a broad category for prosecution of any substance

12

which met standardized recognizable criteria and supplemented that category with a list of substances that were already known to meet those qualifications.

**D. The defendant never argued and therefore waived for purposes of appeal any argument that the indictment may have failed to provide notice because it did not include the name of the non-listed substance as "XLR-11"**

Because no pleading or argument on the record contains an allegation that the indictment was insufficient because it failed to specify the scientific name of the non-listed substance the defendant has waived that argument for purposes of appeal. The State contends *arguendo* that listing the specific scientific name is unnecessary so long as the indictment alleges the requirements of the broad category.

**PRAYER**

This Court should reverse conclusion of law number one of the trial court, set aside the order quashing the indictment, and hold that the State may prosecute under Penalty Group 2-A for any substance that meets the basic requirement set out in the statute that the substance be "any quantity of a synthetic chemical compound that is a cannabinoid receptor agonist and mimics the pharmacological effect of naturally occurring cannabinoids, . . . ." This Court should also rule that the word "including: . . ." creates a non-exclusive list of substances which may be properly categorized under Penalty Group 2-A. This Court should further hold that a substance that meets the requirements of

13

this broad category is therefore "listed" in Penalty Group 2-A for purposes of prosecution under Texas Health and Safety Code §481.113 Manufacture, Delivery, or Possession with Intent to Deliver a Controlled Substance Penalty Group 2-A.

Respectfully submitted,

/s/
_____
Brian Foley
Assistant District Attorney
Polk County, Texas
101 West Mill Street Ste. 247
Livingston, Texas 77351
Telephone: (936) 327-6868
Fax: (936) 327-6875
State Bar No. 24073297